IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM RIGNEY & GMGROUP, LTD. | : |
| | : CIVIL ACTION |
| Plaintiffs, | : No. 12-2608 |
| v. | : |
| MINMETALS, INC. | : |
| Defendant. | : |

**OPINION**

**Slomsky, J.**                                                                                           **October 22, 2012**

**I.     INTRODUCTION**

Before the Court are two motions: 1) Defendant Minmetals, Inc.'s Motion to Dismiss Plaintiffs' Complaint or Stay and Compel Arbitration or, In the Alternative, to Transfer Venue ("Defendant's Motion to Dismiss") (Doc. No. 6), and 2) Plaintiffs' Cross Motion for a Trial by Jury and Stay of Arbitration, Pending such Trial ("Plaintiffs' Cross Motion") (Doc. No. 8).

On April 30, 2012, Plaintiffs William Rigney ("Plaintiff Rigney") and GMGroup, Ltd. ("Plaintiff GMGroup") (collectively referred to as "Plaintiffs"), filed a Complaint against Defendant Minmetals, Inc. ("Defendant") in the Court of Common Pleas of Chester County. (Doc. No. 1-1 ¶ 5.)[1] Plaintiffs' claims arise out of an employment relationship with Defendant, during which the parties entered into multiple written agreements. At the heart of this dispute is

---

[1] The Complaint and accompanying exhibits were attached to Defendant's Notice of Removal as "Exhibit A." (Doc. No. 1 at 5-38.) For purposes of this Opinion, the Court will cite to the Complaint as "Doc. No. 1-1."

1

the question of which of the writings governs. Defendant Minmetals contends that the parties are bound by the January 2009 writing (the "Initial Contract") (Doc. No. 1-1, Ex. A) and the July 2009 writing (the "Second Contract"). (Id., Ex. C.) The Initial Contract, effective January 1, 2009, contains a "Jurisdiction and Forum Selection" provision. The Second Contract, effective July 1, 2009, states "[t]his agreement is additional [sic] to the current agreement between Bill Rigney and Minmetals Inc." (Id.) Plaintiff, on the other hand, alleges that the September 2010 writing (the "Third Contract") is the only valid contract between the parties. There are two drafts of the Third Contract which are essentially similar in their content except for the amount of compensation and bonus to be paid to Rigney. Both drafts of the Third Contract, attached to Plaintiffs' Complaint, are effective July 1, 2012 and state "[t]his agreement will replace the agreement between Bill Rigney and Minmetals Inc. From July 2009." (Id., Ex. E, F.) Defendant disputes the validity of the Third Contract.

The Complaint alleges the following causes of action against Defendant: (1) a violation of the Wage Payment and Collection Law, 43 Pa. Cons. Stat. 260.1 et seq. (Id. 1-1 ¶¶ 25-45); (2) a breach of contract by Defendant based on the Third Contract (Id. ¶¶ 46-50);[2] and (3) a declaration that only the Third Contract is valid. (Id. ¶¶ 51-56.)

On May 24, 2012, following removal of this matter to federal court, Defendant Minmetals filed the instant Motion to Dismiss, relying on the arbitration and forum selection clauses contained in the Initial Contract and the Second Contract. (Doc. No. 6.) In response, Plaintiffs filed a Reply to Defendant's Motion to Dismiss and a Cross Motion for a Trial by Jury

---

[2] The violations contained in Counts I and II are based on the Third Contract, despite Defendant's contention that this contract is not binding on the parties. As such, the question of which contract governs is crucial to the disposition of this dispute.

and Stay of Arbitration, Pending Such Trial.  (Doc. No. 8.)  Additional reply briefs were submitted by both parties.  (Doc. Nos. 9, 10.)  On July 12, 2012, a hearing was held on Defendant's Motion to Dismiss and Plaintiffs' Cross Motion.  (Doc. No. 21.)

For reasons that follow, this Court will grant Defendant's request to transfer venue to the United States District Court for the District of New Jersey.[3]

## II.    FACTUAL BACKGROUND

Plaintiff, William Rigney, is a Pennsylvania resident.  (Doc. No. 1-1 ¶ 1.)  Plaintiff GMGroup, LTD is a Pennsylvania corporation using the fictitious name Global Marketing Group.[4]  (Id. ¶ 2.)  Defendant Minmetals is a New Jersey corporation engaged in the sale of minerals and metals, including specialty products such as rare earth chemicals.  (Doc. No. 6 at 2.)  Plaintiffs' claims arise out of an employment relationship between the parties.

---

[3] In deciding Defendant's Motion to Dismiss and Plaintiffs' Cross Motion, this Court has considered the following: Defendant Minmetals, Inc.'s Motion to Dismiss Plaintiffs' Complaint or Stay and Compel Arbitration or, In the Alternative, to Transfer Venue (Doc. No. 6), Plaintiffs' Reply to Defendant's Motion to Compel Arbitration or In the Alternative, to Transfer and Cross Motion for a Trial By Jury and Stay of Arbitration, Pending Such Trial (Doc. No. 8), Defendant's Reply Brief (Doc. No. 9), Reply Brief to Defendant's Answer to Cross Motion Requesting a Trial By Jury etc. (Doc. No. 10), Proffer of Plaintiffs for the Purposes of Hearing on Motions Related to Arbitration (Doc. No. 19), Reply to Plaintiffs' Proffer for the Purposes of Hearing on Motions Related to Arbitration (Doc. No. 20), the arguments of counsel at the July 12, 2012 hearing (Doc. No. 21), and Defendant's Exhibits submitted to the Court at the July 12, 2012 hearing ("Hr'g Exs.")

[4] According to the Complaint, both Plaintiffs reside at 1311 South Concord Road, West Chester, Pennsylvania.  (Doc. No. 1-1 ¶ 1.)  It is unknown what type of business GMGroup conducts.  Defendant's Hearing Exhibit 29 states: "On information and belief, Rigney has some association with a certain corporation formed and existing under the laws of the Commonwealth of Pennsylvania, known as GMGroup Ltd."  (Hr'g Ex. 29, at 2 n.2.)

In January and February 2009, Plaintiff GMGroup[5] and Defendant entered into the Initial Contract which had an Addendum. (Doc. No. 1-1, Exs. A and B.) The Initial Contract engaged Plaintiffs as independent contractors to handle sales of Defendant's products on a commission basis. It was signed on January 23 and February 6, 2009 by a representative of Defendant Minmetals and Plaintiff Rigney, respectively.[6] (Id., Ex. A.) The Addendum was signed in late 2009[7] by a representative of Defendant Minmetals and Plaintiff Rigney on behalf of Global Marketing Group, respectively. (Id., Ex. B.)

The Initial Contract had a two year term, which automatically terminated in January 2011 unless it was extended by both parties in writing. (Id., Ex. A at 4-5.) The contract provisions governing the term and termination of the agreement provide:

> 4.1.  Term. The term of this Agreement shall be Two year(s) from the date of this Agreement (the **"Term"**). The Term may be extended upon mutual agreement of the parties hereto, for up to a period of one additional two year Terms [sic] upon mutual agreement of the parties to this Agreement. To be effective, such agreement must be in a signed writing or reflected in an authenticated electronic or digital communication.
>
> 4.2.  Termination By Either Party. This Agreement may be terminated by Representative by giving written notice to MINMETALS at least one hundred eighty (180) days before the date of expiration of this Agreement or any

---

[5] Plaintiffs and Defendant disagree about who entered into the Initial Contract with Defendant. Defendant believes Bill Rigney entered into the Initial Contract with Defendant. However, Plaintiffs believe GMGroup entered into the Initial Contract. For purposes of the analysis here, this difference is not material. As such, this Opinion will refer to Plaintiffs collectively.

[6] Plaintiffs' sales responsibilities are described in Section 2 of the Initial Contract.

[7] The signatures on the Addendum are dated December 6, 2009 and January 6, 2009, respectively. This Court presumes the January 6, 2009 date was incorrectly written and should have been January 6, 2010. The exact dates of these signatures are not material to this Court's analysis.

> extension thereof. MINMETALS may terminate this Agreement at any time by giving Representative at least one hundred eighty (180) days prior written notice of its intention to terminate. To be effective notice must be unequivocal and must signify the terminating party's intention to terminate. No indemnity, damages or other compensation shall be payable to either party on account of such termination.

(Id., Ex. A at 4.) In addition, Section 10 of the Initial Contract sets forth what constitutes effective notice, and provides contact information for both parties to whom notice should be sent as well as the following condition:

> Any correspondence or notice required to be given under this Agreement shall be deemed given when delivered, if delivered, or given three (3) business days after it was dispatched by registered or express mail, postage prepaid, to the address shown above or to such other address as to which the addresses shall have given written notice.

(Id., Ex. A at 7, ¶ 10.) The Initial Contract also contains the following provisions requiring arbitration if the parties cannot reach an amicable resolution.

> 11.1. If a dispute arises between the MINMETALS and the Representative or its principals, the parties shall cause their senior executive officers to meet to attempt an amicable resolution. If an amicable resolution cannot be made within 30 days (or such longer period as the parties may agree upon) following receipt of a notice from a party that a dispute exists, then the provisions of Section 11.2 shall apply.
>
> 11.2. Any controversy or claim arising out of or relating to this Agreement, or any purchase order hereunder, or the formation or breach hereof or thereof, shall be determined by arbitration before a panel of three neutral arbitrators administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules. The place of arbitration shall be Weehawken, New Jersey, the language of the arbitration shall be English and judgment upon any awards may be entered in any court having jurisdiction. The arbitrators shall have the power to grant restraining orders, injunctions and other forms of equitable relief and to permit reasonable pre-hearing discovery and may enter interim awards as they deem appropriate. If any one or more of the arbitrators shall resign, die or become incapacitated, the remaining arbitrators may continue the proceedings and may render an award on behalf of the panel. If all of the appointed arbitrators resign,

> become incapacitated or die, then the appointing authority shall appoint three successors to continue and conclude the proceedings and render an award.

(Id., Ex. A at 7.)  Additionally, the Initial Contract's integration clause provides:

> 13.5  Entire Agreement, No Amendments or Waivers.  This Agreement, together with the Exhibits constitutes the entire agreement between the parties with respect to the Products and the services of Representative.  Any and all of the prior agreements or understandings between the parties, whether oral or written, with respect to the subject matter hereof are canceled.  Failure of either party at any time to require strict performance of any provisions hereof shall not affect its right to require full performance thereof at any time thereafter.  The waiver by either party of a breach of any provision shall not constitute a waiver of any subsequent breach thereof or nullify the effect of such provision.  Representative acknowledges that it is not relying upon any statement or representation by MINMETALS other than this Agreement.  Oral amendments, oral waivers and purported oral terminations are void.  The parties have negotiated this Agreement in good faith and no adverse inference shall be drawn against any party for its part in the drafting or revisions to this Agreement.  All Exhibits to this Agreement and Recitals are incorporated herein by reference and are part of this Agreement.

(Id., Ex. A at 8.)  Finally, the Initial Contract includes a forum selection clause, which provides that the contract terms are construed under New Jersey law and that the parties consent to exclusive jurisdiction in New Jersey state and federal courts.  The provision states as follows:

> 13.6  Jurisdiction and Forum Selection.  This Agreement shall be construed in accordance with and governed by the United States Arbitration Act, and the laws of the State of New Jersey, excluding any law or rule that might cause the application of the laws of any other jurisdiction.  The parties consent to the exclusive jurisdiction of the state and federal courts sitting in New Jersey and agree that such courts shall have the authority to grant and enter orders and judgments in aid of arbitration, including, without limitation, temporary restraining orders, injunctions and other equitable relief pending the final determination by the arbitrators of any dispute.

(Id., Ex. A at 8, ¶ 13.6.)

The Addendum to the Initial Contract contains a provision granting Plaintiffs additional sales rights and provides:

6

> This Addendum to the Rare Earth Chemical Products Sales Representative Agreement . . . between MINMETALS, INC. . . . and GLOBAL MARKETING GROUP LTD . . . is intended to modify and supplement the Rare Earth Chemical Products Sales Representative Agreement ("Agreement").
>
> Representative is hereby granted the exclusive right to sell Products in the Republic of Mexico and in all of South America to Customers in accordance with all of the terms and conditions of the Rare Earth Chemical Products Sales Representative Agreement.

(Id., Ex. B.)

In July 2009, Plaintiff and Defendant entered into an additional written agreement, the Second Contract, which was signed by "Bill Rigney, GMG" and "Li Zheng, Minmetals Inc." in August 2009. (Id. ¶ 11.)[8]  Both parties performed under the Second Contract. (Id. ¶ 11.) Included in the Second Contract is the following provision:[9]

> This agreement is additional to the current agreement between Bill Rigney and Minmetals Inc. This agreement will be reviewed at the end of 2009.

(Doc. No. 6, Ex. 1 at 3.)

In approximately August 2010, the parties engaged in contract negotiations, during which a number of proposals for a new employment contract were exchanged (the "Third Contract"). (Doc. No. 1-1, ¶ 13.) For example, one draft provided Plaintiff Rigney with a salary of $7,000 per month (Id. ¶ 14; see also id., Ex. D), while a second draft lowered Plaintiff Rigney's salary to $6,000 per month. (Id. ¶ 15; see also id., Ex. E.) Both drafts of the Third Contract contained the following provision:

---

[8] A partially executed copy of the Second Contract was attached to the original Complaint as "Exhibit C." A fully executed copy of the Second Contract is attached to Defendant's Motion to Dismiss as "Exhibit 1." (Doc. No. 6, Ex. 1.)

[9] For purposes of this Opinion, there are no other dispositive changes in the Second Contract.

>   This agreement will replace the agreement between Bill Rigney and Minmetals Inc. from July 2009.  This agreement will be reviewed every 12 months.

(Id., Exs. D, E.)

On August 31, 2010, Li Zheng, a General Manager employed by Defendant, advised Plaintiff Rigney by e-mail that he would sign the "new contract soon." (Id., ¶ 16; see also id., Ex. F.)  Thereafter, on September 2, 2010, Andrew DaoJing Liu, President and Chairman of Minmetals, sent an e-mail allegedly confirming the terms of the Third Contract.[10] (Id., ¶ 17; see also id., Exs. G and I.)  According to Plaintiffs, the Third Contract provided Plaintiff Rigney with an annual salary of $70,000.  (Id. ¶ 18.)  In addition, Plaintiff Rigney alleges that the Third Contract gave him additional responsibilities including, but not limited to, identifying and developing new value added products, as well as toll production of products.[11] (Id., ¶ 20.)  According to Plaintiffs, the parties performed and operated under the terms of the Third Contract. (Id., ¶ 21.)  Plaintiffs maintain that the Third Contract replaced the previous contracts and that it is the only valid contract between the parties.  (Id., ¶¶ 19, 22.)  However, no fully executed Third Contract has been submitted by Plaintiffs and Defendant disputes its validity.

On February 28, 2011, Defendant terminated its relationship with Plaintiffs.  (Id., ¶ 24.) Thereafter, on April 30, 2012, Plaintiffs filed their Complaint against Defendant in the Court of Common Pleas of Chester County, Pennsylvania. (Doc. No. 1 ¶ 5.)  On May 11, 2012, Defendant filed a Notice of Removal to this Court based on diversity of citizenship jurisdiction.

---

[10] According to the Complaint, "Exhibit G" is an e-mail written in Chinese from Andrew DaoJing Liu to Plaintiff Rigney confirming the terms of the Third Contract. (Doc. No. 1-1, ¶ 17.) "Exhibit H" is the alleged English translation of that e-mail, as provided by Defendant. (Id.)

[11] "Toll production of products" is not described in the Complaint.

(Doc. No. 1.)  In addition, on May 22, 2012, pursuant to the terms of the Initial Contract between the parties, Minmetals filed an arbitration demand[12] against Plaintiff Rigney with the International Centre for Dispute Resolution, pursuant to Section 11.2 of the Initial Contract. (Doc. No. 6 at 2.)

On May 24, 2012, Defendant filed the instant Motion to Dismiss, arguing that the Complaint should be dismissed in its entirety, or stayed pending arbitration pursuant to the arbitration clause in the Initial Contract.  Defendant further argues that Plaintiff Rigney's Wage Payment and Collection Law claim and GMGroup's claim for declaratory relief must be dismissed as a matter of law.  In the alternative, if the Court finds that arbitration is not appropriate, Defendant requests that the case be transferred to the United States District Court for the District of New Jersey pursuant to the forum selection clause contained in the Initial Contract.

In response, Plaintiffs filed a Cross Motion for a Trial by Jury and Stay of Arbitration Pending Such Trial, pursuant to Section 4 of the Federal Arbitration Act.  (Doc. No. 8.) Plaintiffs contend that whether arbitration should be compelled here is governed by Section 4 of the Federal Arbitration Act, which requires a jury trial in this case to determine if a contract with a valid arbitration clause exists.  In support of their argument, Plaintiffs rely on a Third Circuit

---

[12] The dispute before the International Centre for Dispute Resolution, entitled *Minmetals, Inc. v. William J. Rigney*, alleges eleven claims against Rigney.  Claim I is for breach of contract, Claim II is for a breach of post-termination confidentiality, Claim III is for a violation of the post-termination non-compete clause, Claim IV is for indemnification, Claim V is for trademark and name infringement, Claim VI is for a trade secret violation, Claim VII is for conversion of propriety product samples, Claim VIII is for conversion of commercial documents, Claim IX is for tortious interference with contract, Claim X is for unjust enrichment, and Claim XI is for personal liability.  (Hr'g Ex. 29.)

case, which found:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. . . . The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

Par-Knit Mills, Inc. V. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980).

### III. LEGAL STANDARD

Defendant has moved to dismiss or stay and compel arbitration, or in the alternative to transfer this matter to the United States District Court for the District of New Jersey. A district court may transfer a case pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought or to any district or division to which all parties have consented."

A moving party seeking to transfer a case bears the burden of establishing that: (1) venue is proper in the transferee forum, (2) transfer is more convenient for the parties and witnesses, and (3) transfer would be in the interest of justice. Lehr v. Stryker Corp., No. 09-2989, 2010 WL 3069633, at *3 (E.D. Pa. Aug. 4, 2010). While there is ordinarily a strong presumption in favor of a plaintiff's choice of forum, a court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995); see also Hollander v. Hospira, Inc., No. 10-235, 2010 WL 4751669, at *3 (E.D. Pa. Nov. 22, 2010) (granting a motion to transfer because justice was best served by transfer); see also Inaganti v. Columbia Props. Harrisburg, LLC, No. 10-1651, 2010 WL 2471671, at *2 (E.D. Pa. June 15, 2010) (recognizing

that § 1404(a) transfer analysis is flexible and must be made on the unique facts of each case). Therefore, the burden is on the moving party to show that "all relevant things considered, the case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotations and citation omitted).

In Jumara, the Third Circuit set forth "private interest" and "public interest" factors that a district court may consider in deciding a motion to transfer. 55 F.3d at 879-80. First, the "private interests" established in Jumara include:

> [P]laintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (internal citations omitted). Second, the "public interests" discussed in Jumara include:

> [T]he enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, the relative administrative difficulty in the two fora resulting from the court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

A forum selection clause is valid if there has "been no 'fraud, influence, or overweening bargaining power.'" Id. (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)). If a forum selection clause is found to be valid, it "is treated as a manifestation of the parties' preferences as to a convenient forum" and the plaintiff has "the burden of demonstrating why they should not be bound by their contractual choice of forum." Id. at 880.

## IV. DISCUSSION

Defendant moves to dismiss Plaintiffs' Complaint or stay this matter pending arbitration or, in the alternative, to transfer venue to the United States District Court for the District of New Jersey. Defendant contends that the provisions of the Initial Contract, which were adopted in the Second Contract, governing arbitration and forum selection are controlling. Plaintiffs oppose Defendant's motion, maintaining that the Initial Contract was not valid because it was superceded or modified by the Third Contract, which did not contain an arbitration or forum selection provision.

Regarding the first "private interest" Jumara factor, it is apparent that the parties manifested a preference to litigate any dispute in the United States District Court for the District of New Jersey. This district was the designated forum in the Initial Contract. It is well-settled that a party may move to transfer a case to another federal court based on a valid forum selection provision pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

See Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 297-99 (3d Cir. 2000) ("It is clear that a party may bring a motion to transfer from the initial federal forum to another federal court based on a valid forum selection clause.").

Here, Plaintiffs' claims are based on conduct occurring during the two year period of time that the Initial Contract was in effect, from January 2009 to January 2011. (Doc. No. 1, Ex. A at 4 ¶ 4.1.) The Initial Contract contains valid binding arbitration and forum selection

provisions.  Moreover, termination of the Initial Contract had to be provided by the terminating party in writing and "must be unequivocal and must signify the terminating party's intention to terminate."  (Id. at 4 ¶ 4.2.)

This Court has not been presented with any unequivocal evidence of termination or modification of the Initial Contract as required by paragraph 4.2 of the Initial Contract.  To overcome this deficiency, Plaintiffs argue that the parties performed under the Third Contract, which states, "[t]his agreement will replace the agreement between Bill Rigney and Minmetals Inc. from July 2009."  (Id., Ex. E.)  This illustrates, according to Plaintiffs, that the Third Contract was in effect.  However, the Third Contract also is not signed by either party, and the Initial Contract explicitly states that "[o]ral amendments, oral waivers and purported oral terminations are void."  (Id., Ex. A ¶ 13.5.)  Furthermore, the Third Contract states that it will replace the July 2009 agreement.  July 2009 is the date of the Addendum, not the Initial Contract.  The replacement language indicates at best that the parties intended the Third Contract to modify or supersede the Addendum, rather than replace the Initial Contract.  (Id., Ex. E.)

At the July 12, 2012 hearing before this Court, Plaintiffs relied on e-mails between Plaintiff Rigney and Li Zheng, an employee of Defendant.  These e-mails, dated August 31, 2010 and September 13, 2010, however, only reference future terms of an employment arrangement between Defendant and Plaintiff.  For example, in an e-mail dated September 13, 2010, Rigney states, "[i]f my salary is $70,000 for 12 months then the monthly salary should be 5833/month."  (Id., Ex. I.)  In an e-mail dated August 31, 2010, Mr. Zheng stated that he "will be signing" a new contract referenced therein.  (Id., Ex. F.)  However, there is no evidence that a

13

new contract was signed.

Accordingly, the evidence in the record reflects that there was no written notice of termination of the Initial Contract as required of a terminating party under paragraph 4.2 of the Initial Contract. Any oral agreements to the contrary are void, as specifically prohibited by the Initial Contract in paragraph 13.5. Thus, the Initial Contract remains valid. It is therefore evident that the forum selection clause of the Initial Contract controls this dispute. Paragraph 13.6 of the Initial Contract, under the heading "Jurisdiction and Forum Selection," states, in pertinent part, that "[t]he parties consent to the exclusive jurisdiction of the state and federal courts sitting in New Jersey." (Id., Ex. A at ¶ 13.6.) Plaintiffs argue that the Court should not transfer venue in this case because there is no forum selection clause in the Third Contract. While it is true that the Third Contract does not contain a forum selection clause, there is no evidence that the Initial Contract was terminated. The forum selection clause in the Initial Contract remains in full force.

Plaintiffs also argue that Defendant improperly challenges venue after removal to federal court. This Court disagrees. Venue is proper in this case in the Eastern District of Pennsylvania because Plaintiffs reside in the Eastern District and Plaintiffs and Defendant transacted business in the Eastern District. Venue is also proper in the District of New Jersey, as the Defendant's principal place of business is in New Jersey and Plaintiffs transacted business there. Thus, the forum selection clause agreed to by the parties as part of the Initial Contract controls.

In addition, the Court has considered the balance of the "private interest" and "public interest" factors set forth in Jumara. While many of the Jumara factors are neutral as to whether this case should be transferred, some factors do apply and favor a transfer of this case. A New

Jersey court would be more familiar with New Jersey law which governs the dispute here. That court would be in a better position to apply New Jersey law than this Court. Moreover, it is easier for a court in the District of New Jersey to enforce a judgment. While books and records of the parties may be located in both Pennsylvania and New Jersey and there appears to be no overriding local interest or public policy favoring New Jersey, the fact that the parties have designated in the Initial Contract the District of New Jersey for dispute resolution is the overriding consideration for transfer of this case.

Therefore, this Court will not dismiss the Complaint nor compel arbitration, but will transfer this matter to the District of New Jersey.

### V.     CONCLUSION

As the Third Circuit noted in Salovaara, "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." 246 F.3d at 299. For the above reasons, this Court will grant transfer of this matter to the United States District Court for the District of New Jersey.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| WILLIAM RIGNEY & GMGROUP, LTD. | : | | |
| | : | CIVIL ACTION | |
| | : | | |
| Plaintiffs, | : | No. 12-2608 | |
| | : | | |
| v. | : | | |
| | : | | |
| MINMETALS, INC. | : | | |
| | : | | |
| | : | | |
| Defendant. | : | | |

## ORDER

**AND NOW**, this 22nd day of October 2012, upon consideration of Defendant's Motion to Dismiss or Stay and Compel Arbitration or, in the alternative, to Transfer Venue (Doc. No. 6), the other filings in this case and after argument of counsel for the parties at a hearing held on July 12, 2012, Defendant's request to transfer venue is hereby **GRANTED** and it is **ORDERED** that:

1. The Clerk of Court shall transfer this case to the United States District Court for the District of New Jersey.

2. All pending motions are DENIED without prejudice as MOOT.

3. The Clerk of Court shall close the above-captioned matter.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.